**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

In Re:

Q4 PROPERTIES, LLC,                                              Case No. 14-37540-RAM
                                                                 Chapter 11

      Debtor.

_____/

Q4 PROPERTIES, LLC, and
Q5 PROPERTIES, LLC

                                                                 Adv. No.

      Plaintiffs,

vs.

NE 4TH COURT LOANS, LLC,
a Florida limited liability company,

      Defendant.

_____/

## COMPLAINT

**Q4 PROPERTIES, LLC**, Debtor in this matter, and **Q5 PROPERTIES, LLC**., Debtor in

the companion case as co-Plaintiff herein, by and through their undersigned counsel, sue NE 4TH

COURT LOANS, LLC, ("Lender") a Florida limited liability company, and states:

1.    This is an adversary to:

    A.    Determine the extent, priority and validity of liens or claimed liens and mortgages against real property of the Debtors, including a cross-collateralization on both Debtors' property; and

    B.    Determine the validity of the mortgage modification agreement; and

    C.    To determine the amount of the resulting claim or lien of Lender.

2.    This is a core proceeding.

1

### PARTIES, JURISDICTION AND VENUE

3.      Plaintiff, Q4 Properties, LLC, is a Florida Limited Liability Company. ("Q4"). Q4 is a debtor in possession pursuant to Chapter 11 of Title 11, United States Code.

4.      Plaintiff, Q5 Properties, LLC, is a Florida Limited Liability Company. ("Q5")

5.      At all material times, Ofer Mizrahi was the sole managing member of Q4 and Q5 ("Mizrahi").

6.       NE 4th Court Loans, LLC, ("Lender") is a Florida limited liability company, doing business in this Judicial district.

### GENERAL ALLEGATIONS

7.      Plaintiff, Q4 Properties, LLC owns three commercial properties located at 7380/7390/7410 NE 4th Court in Miami, Florida respectively (the "Q4 Real Property").

8.      Plaintiff, Q5 Properties, LLC owns a commercial property located at 7500 NE 4th Court, in Miami, Florida respectively (the "Q5 Real Property").

9.      In 2008, Q4 and Q5 purchased the Q4 and Q5 Real Property with funds borrowed from TotalBank, a Florida banking corporation.

10.     On August 29, 2008, Plaintiff, Q4 Properties, LLC, executed and delivered a Promissory Note to TotalBank in the amount of $1,852,500.00. ("Q4 Loan").

11.     The Q4 Loan was adjustable to the 3 year T-bill, plus a margin.

12.     On August 29, 2008, Plaintiff, Q5 Properties, LLC, executed and delivered a Promissory Note to TotalBank in the amount of $888,000. ("Q5 Loan").

13.     The Q5 Loan was adjustable to the 3 year T-bill, plus a margin.

14.     The Q4 Note was secured by a mortgage on the Q4 Real Property in favor of TotalBank.

15.     The Q5 Note was secured by a mortgage on the Q5 Real Property in favor of TotalBank.

16. On March 29, 2011, Plaintiffs, Q4 Properties, LLC and Q5 Properties, LLC, executed a Note and Mortgage Modification ("Loan Modifications"). The Loan Modification paperwork was backdated to December 2010, and not recorded until April 2011.

17. The Loan Modifications were detrimental to Q4 and Q5 in that included therein was an interest rate "floor" of 5.5% which was greater than the Q4 loan interest rate and Q5 loan interest rate.

24. Furthermore, TotalBank required Q4 and Q5 to pay substantial costs associated with the Loan Modifications.

25. Payment of the Loan Modifications costs along with the increased interest rate, diverted funds away from Q4 and Q5 needed for the upkeep, renovation and preparation of the Real Property for tenants and to increase the rent roll.

18. The Q4 and Q5 Mortgages and Loan Modifications were assigned to NE 4th Court Lender in or about March 2013.

19. Lender claims to own and hold the Mortgages.

20. NE 4th Court took the loans with actual or constructive knowledge of a dispute of the loan terms and amount by the borrowers.

21. Alternatively, NE 4th Court should have known of the dispute, being on, at the very least, inquiry notice.

22. Q4 and Q5 want to cure the Mortgage, de-accelerate or determine that acceleration was improper or inequitable and pay the debt. Lender is seeking to own the property of the Debtor and acquired the Loans with the intent to acquire the Q4 and Q5 Real Properties.

23. Q4 and Q5 have retained counsel to bring this action and are entitled to recover their attorneys' fees and costs for the defense and prosecution of this matter based upon the

contract of the parties as contained in the Loan Documents and Florida law.

## COUNT I
### Rescission/Reformation of Loan and Loan Modifications
### Extent of Claim

Plaintiffs re-allege and re-adopt paragraphs 1-23 of this Adversary as if fully set forth herein and further allege the following:

24.    Debtors are in need of a declaration of the extent of the claim of Lender in order to deal with the claim in a Plan.  The extent of the claim is dependent on the validity of the Loan Modifications and the applications of certain payments and overpayments.

25.    This is an action for Declaratory Judgment concerning the extent of a Claim and the validity of the Loan Modifications and/or for reformation and/or rescission of the Loan Modifications concerning real property owned by the Debtors.

*Inception Credit*

26.    At the inception of the Loans, the Debtors via Ofer Mizrahi, paid $16,875 ("Check") to TotalBank. The payment was originally for a loan that was to be made to Coverings to improve and operate the premises.

27.    That loan was never issued but TotalBank suggested a secured loan to Q4 and Q5.

28.    When Mizrahi requested a refund of the funds represented by the Check, a representative of TotalBank, with actual or apparent authority to do so, represented to Mizrahi that the funds would be credited to the Q4 Loan and to the Q5 Loan.

29.    In reliance on the representation concerning the Check, Mizrahi and Q4 and Q5 believed that a credit had been given for the amount of the Check.

30.    Subsequently, the Debtors have discovered that the $16,875 was never applied to the costs and that all of the costs of the Q4 and Q5 loans were paid by Q4 and Q5.

4

31.     Q4 and Q5 are entitled to a pro rata credit equal to a total of $16,875 applied at the inception of the Loans. ("Inception Credit").

*Interest miscalculations.*

32.     TotalBank miscalculated the interest on one or both of the loans resulting in an overpayment.

33.     The overpayment should be credited as of the date of each overpayment.

*Escrow overages.*

34.     Each year, TotalBank would have excess escrow funds when the taxes were paid and would return or credit said funds for the benefit of the Debtors.

35.     In 2012, TotalBank failed to return or apply the escrow funds overage.

36.     In 2013, TotalBank and/or Lender failed to apply $26,000 to the taxes then due or to the loan payments coming due causing penalties and/to interest to accrue.

*Loan Modifications.*

37.     On or about November 2010, a representative of TotalBank contacted Mizrahi and represented to him as follows ("Representations"):

(a)     Federal banking authorities were reviewing the Q4/Q5 Loan;

(b)     The Q4/Q5 Loan was not in compliance with "new rules";

(c)     As a result of noncompliance, TotalBank was required to restructure the Q4/Q5 Loan to comply with governmental rules; and

(d)     In the event that Q4/Q5 would not sign modifications, TotalBank would have no option except to declare defaults and to foreclose.

38.     At the time, the parties were on good terms and Mr. Mizrahi had no reason not to believe the Representations.

39.     TotalBank representatives informed Mizrahi that Q4/Q5 should withhold payments until the

modification was done. At that time, the Debtors were not in any material default and the loans were not in accelerated status.

40. Q4/Q5 never solicited, requested nor wanted a modification.

41. The modification did not benefit the Debtors in any way, but rather substantially harmed their position and generated a fee and costs borne by Q4/Q5.

42. TotalBank informed Mizrahi that the modification "would not harm" Q4/Q5's position ("Additional Representation").

43. The Representations and Additional Representation were made by an agent of TotalBank with actual or apparent authority to make the statements to Q4/Q5.

44. These Representations and Additional Representation were repeated between December 2010 and March 29, 2011, when Mizrahi, on behalf of Q4 and Q5, signed the Loan Modification documentation requested by TotalBank.

45. The Representations and Additional Representation were made with the specific intent and/or goal of TotalBank to deceive Defendants/Counter Plaintiffs Q4 and Q5 and cause Q4 and Q5 to rely on them.

46. Alternatively, the Representations and Additional Representation were made by TotalBank negligently or recklessly and without full disclosure of information that the borrowers need to properly evaluate the demand.

47. Q4 and Q5 actually relied on the Representations and Additional Representation made by TotalBank's representative and signed the Loan Modification documentation, believing that the Debtors had no choice but to sign or to then lose the properties.

*Remedies*.

48. Applying the Inception Credit, payments, credit for unnecessary costs, overpayments

6

resulting from the Loan Modifications and the amounts not released from escrow and the amounts kept by Lender results in a loan balance different and lower than the amounts claimed by Lender.

49. TotalBank failed to properly declare an acceleration or should be equitably denied acceleration.

50. As a result of a mutual mistake on the part of Q4 and Q5, and TotalBank, the loan documents fail to express the intended agreement of the parties.

51. Specifically, Q4 and Q4 made a pre-payment of $16,875 to TotalBank.

52. In 2014, Q4 and Q5 discovered that the pre-payment was not applied to the loan or costs and this resulted in the original principal balance being overstated on the Notes.

53. In equity, the prepayment should be allocated proportionately between the two Notes, and the Notes and Mortgages reformed to reflect the true starting principal.

54. Q4/Q5 have also recently discovered that during the loan administration, TotalBank charged interest at a rate above the rate stated in the Notes and charged escrow that was far in excess of the amounts needed. When asked, TotalBank refused to credit the overages to the installments artificially creating a delinquency.

55. This mistake and the mistake on the pre-payment resulted in the balance re-stated in 2010 loan modification documents to be overstated.

56. To the extent that the 2010 Modification Agreement is valid and not rescinded, it should be reformed to reflect the prepayment and the interest overcharge in that all overcharges must be applied to principal reductions.

57. In addition, Debtors allege that, on the facts, TotalBank did improperly accelerate the Debt and therefore the Lender should be denied default interest, which it claims.

58.    Due to the bona fide disputes, to the extent that there is any balance due and owing to the Lender to bring the Loan into current status, the Debtors should be afforded a reasonable time to pay same and Lender should be denied an acceleration.

59.    The parties are in need of a declaration of the status of the Loans, the application of the credits and payments, including any tax escrow funds, liability for the late payment of the taxes, and, if any, the cure amount so that Debtors can file a plan in this case and end this dispute once and for all.

60.    Lender, by assignment, stepped into the shoes of TotalBank and is bound by the acts and omissions of TotalBank.

61.    As the result of TotalBank and/or Lender' handling of the Loans and funds and/or bad faith conduct, the Debtor has been forced to incur attorneys fees for which Defendants should be held liable under the respective Notes.

**WHEREFORE**, Plaintiffs demand a declaratory judgment against NE 4th Court:

A.    Declaring the Loan Modifications null or invalid;

B.    Alternatively, reforming the Loan Modifications

C.    Applying the excess interest payments, the inception credit the escrow overage to payments and or principal due on the loans and declaring the extent of the claim of the Lender;

D.    Denying Lender default interest;

E.    Denying Lender acceleration;

F.    Awarding fees and costs to the Debtors; and

G.    Awarding such other or further relief as may be equitable and just in the circumstances.

8

## COUNT II
**Extent of Secured Claim**

Plaintiffs re-allege and re-adopt paragraphs 1-23 of this Adversary as if fully set forth herein and further allege the following:

62. The amount of the debt claimed by Lender exceeds the value of the Property, either individually or in the aggregate (if the Loan Modifications are valid) and Lender, under Section 506 of the Code, has a valid secured claim only for the value of the Property on the petition date.

63. The value of the Property on the petition date is believed to be:

A. Q4: $1,800,000

B. Q5: $850,000

*WHEREFORE*, the Debtor respectfully requests the entry of Court orders to declare the extent of the secured claim on the property of the Debtor.

I HEREBY CERTIFY that I am admitted to Bar of the United States District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this court as set forth in Local Rule 2090(a).

Dated this 13th day of February, 2015.

/s/ Scott Alan Orth, Esq.
**SCOTT ALAN ORTH, ESQ.**
Florida Bar No. 436313
*Attorney for Debtor*s
LAW OFFICES OF SCOTT ALAN ORTH, P.A.
3880 Sheridan Street
Hollywood, FL  33021
305.757.3300 / 305.757.0071 Fax
scott@orthlawoffice.com
service@orthlawoffice.com (primary)
eserviceSAO@gmail.com (secondary)

9